UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT DILLON,

Plaintiff,

v. Case No: 2:26-cv-1936-SPC-KRH

CITY OF JACKSONVILLE BEACH; SCOTT O'CONNELL; JAMES WALTERS; and T.K. WATERS, in his official capacity as Sheriff of Jacksonville,

Defendants.

---

## OPINION AND ORDER

Before the Court is Defendant City of Jacksonville Beach's Motion to Transfer (Doc. 31). Plaintiff Robert Dillon opposes (Doc. 34). For the below reasons, Defendant's motion is granted.

## BACKGROUND

This is a civil rights action stemming from the Jacksonville Beach Police Department's investigation into an attempted child luring. Apparently, the investigation was marred by shoddy work. Faults included using improper probe images for a facial recognition search, utilizing an improper photo lineup, ignoring key exculpatory evidence, and excluding exculpatory evidence

from the subsequent warrant application. After concluding its investigation, the Jacksonville Beach Police Department concluded Robert Dillon ("Dillon") was the prime suspect.

Dillon, however, had never set foot in Jacksonville Beach, Florida. Despite this, the Jacksonville Beach Police Department obtained a warrant for Dillon's arrest, and the Lee County Sheriff's Office executed it at Dillon's home in Fort Myers, Florida. Dillon remained in detention overnight and posted bond the next morning. After months of fighting the criminal charge, it was dropped. The alleged unlawful arrest caused Dillon to fight the criminal charge unnecessarily, lose income from his crabbing business, and endure ongoing social stigma.

**LEGAL STANDARD**

A district court "may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). The movant bears the burden to establish "that transferring venue to another division *clearly* would be more convenient for the parties and/or witnesses, or would best serve the interest of justice." *See Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d. 1203, 1207 (N.D. Fla. 2020) (emphasis added) (citing *In re Ricoh*, 870 F.2d 570, 573 (11th Cir. 1989)). Simply showing that litigating in another division is either equally convenient or transfers the inconvenience from one part to

another is insufficient. *See id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964); *S.E.C. v. Lauer*, 478 F. App'x 550, 554 (11th Cir. 2012)).

District courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Courts typically consider the following factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice. *See id.* at 62 n.6; *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## DISCUSSION

The thrust of the City of Jacksonville Beach's ("Jacksonville Beach") argument is that "all practical problems that make [the] trial of [this] case easy are located in the Jacksonville Division." (Doc. 31 at 4). Dillon contends

Jacksonville Beach failed to carry its burden. (Doc. 34 at 4–12). The Court agrees with Jacksonville Beach, and grants the motion.[1]

### A. Convenience of Witnesses, Documents, and Proof

Witnesses are typically essential to establishing a claim or defense, but rarely gain anything from testifying. As such, the convenience of the witnesses is "one of the most important factors" for determining the best venue for trial. *See Response Rewards Sys., L.C. v. Mejer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002).

Jacksonville Beach alleges that "the victim and her parents, the Defendants, the witnesses, the assistant state attorney that reviewed this matter, [and] the judge that signed the warrant" all reside in the Jacksonville Division. (Doc. 31 at 3–4). Only the Plaintiff resides within the Fort Myers Division. This factor weighs in favor of Defendants.

The documents at issue—*e.g.*, the documentary record, investigative file, facial recognition search records, body-worn camera footage, and warrant materials—are likely accessible in either division, as Jacksonville Beach has not shown that they cannot be easily produced electronically. *See id.* at 1210

[1] Rather than spill unnecessary ink, the Court concludes the availability of process and familiarity with governing law are neutral factors requiring no further discussion.

(citing *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012)). So, this factor is neutral.

**B. Convenience & Relative Means of Parties**

All parties reside in the Middle District of Florida, albeit in different divisions. While transfer to Jacksonville is more convenient for the Defendants, it is inconvenient for Dillon. Further, Jacksonville Beach likely has more means comparatively, given Dillon's representation that he is of modest means and is represented by a *pro bono* attorney. (Doc. 34 at 11). Regardless, § 1404(a) was not designed to reallocate burdens amongst the parties, and, therefore, this factor is neutral. *See Combs*, 461 F. Supp. 3d at 1211 (citations omitted).

**C. Operative Facts**

Another key factor is the location of the operative facts, where courts look to where the events at issue occurred. *See id.* at 1211. Where there are multiple loci of operative facts, courts should attempt to determine if there is one primary locus with the strongest connection to the operative facts. *See id.* at 1211–12.

The parties dispute the true locus of operative facts. Jacksonville Beach argues Duval County is the locus because all actions leading to the alleged wrongful arrest took place in Jacksonville Beach. (Doc. 31 at 3–4). Dillon

argues Jacksonville Beach and Fort Myers are the loci since the investigation occurred in Jacksonville Beach and the wrongful seizure, detention, and his ensuring damages occurred exclusively in Fort Myers. (Doc. 34 at 5–6). The Court, however, finds Jacksonville Beach is the location of the operative facts.

While Dillon may have suffered damages, including the alleged infringement of his constitutional rights, in Fort Myers, this alone does not render the factor neutral. The Amended Complaint primarily focuses on the actions or omissions in Jacksonville Beach Police Department's investigation. No actions or omissions of the Defendants took place in Fort Myers. Though the effects were felt in Fort Myers, the true cause and actus reus all occurred in Jacksonville Beach. Therefore, this factor strongly favors transfer to Jacksonville.

**D. Interest of Justice**

In determining whether the interest of justice favor transferring venue, courts consider:

> (1) where the action is more likely to be expeditiously and efficiently litigated; (2) judicial economy and docket congestion in the competing districts or divisions; (3) each party's ability to enforce a judgment; (4) whether transfer would allow for a consolidation of litigation; (5) the relationship of each community to the controversy; and (6) any obstacles to a fair trial that the parties may encounter in the competing venues.

*Combs*, 461 F. Supp. 3d at 1215 (citations omitted).

Jacksonville Beach failed to discuss most factors. The motion does not explain how the action would be more expeditiously or efficiently litigated in the Jacksonville Division, nor does it explain if any party would have difficulty enforcing a judgment if one is entered. What's more, there is no case for this lawsuit to be consolidated into the Jacksonville Division, nor are there any obstacles for either party to obtain a fair trial in either venue.

The interest of justice, however, still favors transfer given the Jacksonville Beach community's relationship to the controversy. The alleged crime and the Jacksonville Beach Police Department's investigation both occurred in Jacksonville Beach. The Jacksonville Beach community has a significant interest in holding its members accountable for any wrongful actions. Although the Jacksonville Beach Police Department intentionally reached across the Florida peninsula to have Dillon arrested in Fort Myers, the Fort Myers community has a substantially smaller interest in the controversy. Only Dillon is impacted by these actions and omissions, and any remaining interest in the controversy is one of curiosity.

**E. Choice of Forum**

"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Trocano v. Vivaldi*, 720 F. Supp. 3d 1231, 1239 (M.D. Fla. 2024) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d

253, 260 (11th Cir. 1996)). As discussed above, the convenience of the witnesses, the locus of operative facts, and the interests of justice clearly outweigh Dillon's choice of forum. By and large, the controversy is centered around Jacksonville Beach, not Fort Myers. Therefore, Jacksonville Beach's motion to transfer venue is granted.

Accordingly, it is

**ORDERED:**

Defendant City of Jacksonville Beach's Motion to Transfer (Doc. 31) is **GRANTED.** The Clerk is directed to transfer this case to the Jacksonville Division of the Middle District of Florida for all further proceedings. The Clerk shall terminate all deadlines and close the Fort Myers file.

**DONE AND ORDERED** in Fort Myers, Florida on July 27, 2026.

Sheri Polster Chappell

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies: All Parties of Record